IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

HORACE BROWNING,            :

    Plaintiff,                :

vs.                         :     CIVIL ACTION 06-0474-BH-C

JERRY FERRELL, et al.,      :

    Defendants.               :

REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding pro se and in forma pauperis filed a Complaint under 42 U.S.C. § 1983.  This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on Defendants' Motion for Summary Judgment (Doc. 20) and Plaintiff's Opposition thereto.  (Doc. 23).  For the reasons stated below, it is recommended that Defendants' Motion for Summary Judgment be granted and that Plaintiff's action be dismissed with prejudice.

I.  SUMMARY OF FACTUAL ALLEGATIONS

From its review of the record, the Court summarizes the parties' allegations which are material to the issues addressed in this Report and Recommendation.

1. On October 29, 2005, while Plaintiff was incarcerated at Fountain Correctional Facility ("Fountain"), he and another inmate, Tony Lawler, got into a "disagreement" in the dormitory.  (Doc. 23 at 2).

2. According to Plaintiff, several correctional officers "physically subdue[d]" him, and Officer Timothy McCorvey struck him in the face with handcuffs used as "brass knuckles." (Doc. 1 at 4).

3. Plaintiff suffered a laceration and fracture to the left side of his face and underwent surgery to repair the laceration. (Doc. 20, att. 3 at 16; Doc. 20, att. 5 at 8).

4. Defendants deny that Officer McCorvey struck Plaintiff in the face with handcuffs and maintain that Officer McCorvey gave Plaintiff "a brachial stun to the neck," which made Plaintiff fall, hitting his face on the foot rail of the bed on his way down. (Doc. 20, att. 2 at 2; Doc. 20, att. 3 at 6, 8).

For purposes of this motion, the Court will assume, as Plaintiff alleges, that Officer McCorvey struck Plaintiff in the face with handcuffs.[1]

## II. PROCEDURAL ASPECTS OF THE CASE

1. On August 16, 2006, Plaintiff filed the present § 1983 action, alleging that Defendant Correctional Officer Timothy McCorvey violated his Eighth Amendment rights by using excessive force against him in his response to a physical altercation between Plaintiff and another officer. (Doc. 1 at 4).

2. Plaintiff further alleges that defendants Warden Jerry Ferrell and Captain Jeffery

---

[1] Because the Court assumes, for purposes of this motion, that Officer McCorvey struck Plaintiff in the face with handcuffs, it is unnecessary to address the consideration, if any, to be given to the various unsworn inmate affidavits submitted by Plaintiff attesting to this fact.

2

Knox violated his constitutional rights by failing to prevent Officer McCorvey's improper use of force and by failing to properly reprimand Officer McCorvey. (Id. at 5).

3. Plaintiff seeks punitive damages and injunctive relief. (Id. at 7).

4. In the Special Report and Answer filed on behalf of Defendants on April 25, 2007, Defendants deny Plaintiff's allegations and assert various defenses, including absolute and qualified immunity.[2] (Doc. 20).

5. On May 1, 2007, the Court ordered that Defendants' Special Report and Answer be treated as a Motion for Summary Judgment. (Doc. 21).

6. On June 8, 2007, Plaintiff filed a response in opposition to Defendants' Motion for Summary Judgment, reasserting the claims alleged in his Complaint. (Doc. 23).

This motion and response are now before the Court.

---

[2] Plaintiff does not specify whether he is suing Defendants in their official or individual capacities or both. Thus, the Court will consider both. As state officials, Defendants are entitled to absolute immunity from suit for damages in their official capacities. See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment). Furthermore, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). In determining whether qualified immunity is appropriate in a given case, "[t]he court must first ask the threshold question whether the facts alleged, taken in the light most favorable to the plaintiffs, show that the government official's conduct violated a constitutional right." Dalrymple, 334 F.3d at 995 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). Having found herein that Plaintiff's allegations do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201.

### III. SUMMARY JUDGMENT STANDARD

1. In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles.  The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment.  "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . .'"  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

2. The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party.  Barfield v. Brierton, 883 F.2d 923, 934 (11th Cir. 1989).

3. However, Rule 56(e) states that:

> an adverse party [to a motion for summary judgment] may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at 325-27.

4. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . .  If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations omitted).

     5. "Summary judgment is mandated where a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

## IV. DISCUSSION

     1. In this action, Plaintiff seeks redress pursuant to 42 U.S.C. § 1983 for an alleged constitutional deprivation arising out of an altercation that occurred on October 29, 2005, while Plaintiff was incarcerated at Fountain Correctional Facility. For the reasons set forth below, the Court finds that Plaintiff's allegations fail to establish any constitutional violation by Defendants, and, thus, it is recommended that Defendants' Motion for Summary Judgment be granted.

### Claim Against Defendant McCorvey

     2. In his Complaint, Plaintiff claims that Officer Timothy McCorvey violated his Eighth Amendment rights by striking him in the face with handcuffs after Plaintiff had been subdued. (Doc. 1 at 4-5). Plaintiff claims that Officer McCorvey's use of force was excessive and unconstitutional.

     3. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance,

> regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983 (1994).

4. The Eighth Amendment protects a prisoner from punishment that is cruel and unusual. Graham v. Connor, 490 U.S. 386, 394 (1989). Specifically, the Eighth Amendment "prohibits the unnecessary and wanton infliction of pain, . . . the infliction of pain totally without penological justification. . . , [and] the infliction of punishment grossly disproportionate to the severity of the offense." Ort v. White, 813 F.2d 318, 321 (11th Cir. 1987) (citing Rhodes v. Chapman, 452 U.S. 337, 346 (1981)).

5. In order to establish an Eighth Amendment claim, a plaintiff must prove both an objective and subjective component. First, Plaintiff must show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation, and, second, Plaintiff must show that "the officials act[ed] with a sufficiently culpable state of mind," *i.e.*, that they acted "maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-8 (1992).

6. In the prison security context, the factors used to determine whether there has been a violation of the Eighth Amendment are: the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably

perceived, any efforts to temper the severity of a forceful response, and the extent of injury suffered.  Hudson, 503 U.S. at 7 (citing Whitley v. Albers, 475 U.S. 312, 321 (1986)).

7. The question, then, is whether, under the circumstances of this case, a jury could reasonably conclude that Defendant McCorvey violated Plaintiff's rights under the Eighth Amendment.

8. Plaintiff admits that, on the day in question, October 29, 2005, a "disagreement" occurred between himself and inmate Lawler in Dormitory 4.  (Doc. 23 at 2).

9. The undisputed evidence shows that, at approximately 7:15 p.m., Officer John Skipper relieved Officer Timothy Craft of his duties in Dormitory 4.  (Doc. 20, att. 3 at 3).

10. At approximately 7:40 p.m., Officer Skipper observed Plaintiff and inmate Lawler arguing.  (Id).

11. Officer Skipper observed inmate Lawler with a knife in his right hand, and he watched Lawler put the knife in his right front pants pocket.  (Doc. 20, att. 3 at 3).

12. Officer Skipper called for assistance, and he and Officer Gregory Adams entered the dormitory.  (Doc. 20, att. 3 at 3).

13. Officer McCorvey and Officer Craft also responded to the call for assistance, and they entered the dormitory and began conducting a "shakedown" of the room.  (Doc. 20, att. 3 at 8).

14. Officer Craft observed Plaintiff put a second knife under the covers of a bed in the dormitory, and he went to the bed and seized it.  (Doc. 20, att. 3 at 6-7).

15. Officer Skipper grabbed inmate Lawler by the arm and pulled him from the dormitory, and Officer Adams approached Plaintiff.  (Id. at 4, 6-7).

16. Officer McCorvey observed Officer Adams walking with Plaintiff and saw them stop abruptly.  (Id. at 8).  As Officer McCorvey approached Plaintiff and Officer Adams, he saw Plaintiff "turn in a forceful manner" and swing his fist at Officer Adams.  (Doc. 20, att. 2 at 2; Doc. 20, att. 3 at 8).

17. According to Plaintiff, at that point, Officer McCorvey struck him in the face with handcuffs, which he was holding in his fist like "brass knuckles."  (Doc. 1 at 4).  Plaintiff fell to the floor, and Officers Adams and McCorvey subdued Plaintiff and removed him from the dormitory into the hallway.  (Doc. 20, att. 3 at 8).

18. As a result of the altercation, Plaintiff's face was bleeding, and Officer David Kervin took custody of Plaintiff to escort him to the health care unit.  (Doc. 20, att. 2 at 2; att. 3 at 8).

19. As they proceeded down the hallway, Plaintiff demanded that Officer Kervin "let him go," and he abruptly turned and swung at Officer Kervin.  (Doc. 20, att. 3 at 9, 11, 13).

20. Officer Kervin pushed Plaintiff to the floor, and the two began struggling.  (Id.).

21. Officers Everett Jackson, Cyril Savol, and Wesley Murphy ran to assist Officer

Kervin and held Plaintiff down while Officer Jackson handcuffed him.  (Id. at 9-11).

22. Once again subdued, Plaintiff was escorted to the prison health care unit by Officers Kervin and Murphy and was treated for a laceration to the face.  (Doc. 20, att. 3 at 5, 13, 16).

23. At approximately 10:00 p.m., Plaintiff was taken to the Atmore Community Hospital, and from there he was taken to the Mobile Infirmary, for further treatment of the laceration.  (Id. at 5).  Plaintiff's medical records indicate that he sustained a laceration and fracture to the left side of his face, requiring surgical repair of the laceration.  (Doc. 20, att. 5 at 8).

24. A search of Dormitory 4 following the altercation uncovered approximately one and one-half gallons of "inmate made" wine or "julep" hidden in a garbage can.  (Doc. 20, att. 3 at 12, 14).

25. As a result of the incident, disciplinary action was instituted against Plaintiff for several rule violations, including "being under the influence of intoxicants,"[3] assault on an ADOC official, unauthorized possession of a weapon, and failure to obey.  (Id. at 15).  Charges were also brought against inmate Lawler and inmate Pierce for being under

---

[3] Warden Ferrell testified in his affidavit that he questioned Plaintiff within one hour of the incident and observed him in an extremely intoxicated state.  (Doc. 20, att. 1 at 2).  According to Warden Ferrell, Plaintiff had very little memory of what had happened or who was involved.  (Id.).  Lt. Shirley Smith also stated in her investigative report that Plaintiff, inmate Lawler, and inmate Pierce admitted to her that they had been drinking "julep" prior to the incident.  (Doc. 20, att. 3 at 14).  Plaintiff's medical records confirm that Plaintiff smelled of alcohol when he arrived at the emergency room at Atmore Community Hospital.  (Doc. 20, att. 4 at 6).  A blood alcohol test confirmed an "ETOH" (ethanol) level of 189.  (Id. at 7).

9

the influence of intoxicants.  (Id.).

26. For his part, Plaintiff does not deny that he was arguing with inmate Lawler and creating a disturbance in Dormitory 4 on October 29, 2005.  He does not deny that he and Lawler had knives in their possession at the time of their argument.  He does not deny that he was drinking "julep" at the time of the argument with inmate Lawler.  He does not deny that he resisted Officer Adams' attempts to remove him from the dormitory.  Rather, Plaintiff simply argues that Officer McCorvey's blow to his face with handcuffs constituted excessive force.  The Court disagrees.

27. In assessing the factors enumerated above, it is evident that Plaintiff's behavior posed a real and substantial threat to the safety of all of the officers who were involved in the attempt to restore order to Dormitory 4, as well as the other inmates who were in Dormitory 4 at the time of the incident.  Plaintiff's behavior with inmate Lawler, and toward Officers Adams and McCorvey, created a disturbance which undermined prison discipline, order, and safety and justified his forcible removal from the dormitory.

28. Assuming Plaintiff's allegations as true, Defendant McCorvey hit him in the face with handcuffs when Plaintiff attacked Officer Adams.  The blow knocked Plaintiff to floor, and Officers Adams and McCorvey pulled Plaintiff out of the dormitory.

29. Under the circumstances, the threat created by Plaintiff was reasonably perceived, and the need for the application of force to subdue Plaintiff and remove him from the dormitory was present and significant.

30. There is no indication that Defendant McCorvey's motive in striking Plaintiff

was anything other than a good faith effort to gain control of an inmate who was out of control and prevent the further deterioration of security in the dormitory. Officer McCorvey did not instigate the assault on Plaintiff. Rather, he struck Plaintiff only after Plaintiff attacked Officer Adams. This evidences the absence of a motive to "maliciously and sadistically" cause harm. Hudson, 503 U.S. at 6-8.

31. The amount of force used by Officer McCorvey warrants additional consideration. The Court does not condone the use of handcuffs or any other object by prison officials as a weapon to cause "unnecessary and wanton infliction of pain." That being said, the Court is mindful that prison officials must maintain order and discipline "in an often dangerous and unruly environment." Ort, 813 F.2d at 321-22.

32. Prison officials must be extended deference in acting to insure the proper administration, safety, and security of a penal institution. Id. "The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." Id. at 323.

33. In this case, Officer McCorvey attempted to subdue Plaintiff, an inmate who had just been observed with a knife and who was attacking another officer in close quarters in the midst of unrestrained inmates.

34. If Plaintiff is to be believed, Defendant McCorvey subdued him by striking him in the face once with handcuffs, causing Plaintiff to sink to the floor.

35. While the force of Officer McCorvey's blow with the handcuffs was substantial, it may have resulted in less physical force being used against Plaintiff than would have been used if Plaintiff had continued to fight with Officer Adams. A continued struggle would have inevitably led to the involvement of additional officers and the additional use of force, particularly since it appears that Plaintiff was under the influence of alcohol at the time and not responding to commands.

36. It also cannot be overlooked that Officer McCorvey struck Plaintiff only once and did not use a more injurious weapon than handcuffs to halt Plaintiff's assault on Officer Adams, indicating some measure of a tempered response.

37. Although Officer McCorvey's blow to Plaintiff's face with handcuffs was extremely serious and caused a significant injury to Plaintiff's face, considering all of the factors enumerated above, Plaintiff's allegations simply do not support his claim of excessive force.

38. Therefore, since no constitutional violation has been established, Defendants' Motion for Summary Judgment is due to be granted. See Bennett v. Parker, 898 F.2d 1530, 1534 (11th Cir. 1990) ("No material issues can be in dispute where the plaintiff's evidence fails to establish a constitutional violation.").

Additional Grounds for Dismissing Claims Against Defendants Knox and Ferrell

39. Because the Court has found that Defendant McCorvey did not use excessive force against Plaintiff, Plaintiff's claims against Defendants Knox and Ferrell for failure to supervise and reprimand Officer McCorvey for his alleged use of excessive force fail

as a matter of law.

40. In addition to the foregoing, Plaintiff's claims against Defendants Knox and Ferrell fail as a matter of law for lack of evidence of a causal connection between these Defendants and the alleged constitutional violation by Officer McCorvey.

41. In order to state a claim upon which relief can be granted in a § 1983 action, a Plaintiff must establish a causal connection between each defendant's actions, orders, customs, policies, or breaches of statutory duty and the alleged deprivation of his constitutional rights. Boglin v. Weaver, 2001 WL 228172, *14 (S.D. Ala. 2001) (unreported).

42. "[S]upervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

43. "The necessary causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.'" Id. (citations omitted).

44. "Alternatively, the causal connection may be established when a supervisor's 'custom or policy . . . result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" Id. (citations and internal quotation marks omitted).

13

as a matter of law.

40. In addition to the foregoing, Plaintiff's claims against Defendants Knox and Ferrell fail as a matter of law for lack of evidence of a causal connection between these Defendants and the alleged constitutional violation by Officer McCorvey.

41. In order to state a claim upon which relief can be granted in a § 1983 action, a Plaintiff must establish a causal connection between each defendant's actions, orders, customs, policies, or breaches of statutory duty and the alleged deprivation of his constitutional rights. Boglin v. Weaver, 2001 WL 228172, *14 (S.D. Ala. 2001) (unreported).

42. "[S]upervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

43. "The necessary causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.'" Id. (citations omitted).

44. "Alternatively, the causal connection may be established when a supervisor's 'custom or policy . . . result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" Id. (citations and internal quotation marks omitted).

45. Where, as here, a plaintiff's claim rests on a supervisor's alleged failure to supervise his employee and prevent the alleged misconduct, a plaintiff "must present some evidence that the [defendant] knew of a need to train and/or supervise in a particular area and the [defendant] made a deliberate choice not to take any action[,]" that this failure to train and/or supervise constitutes a custom or policy, and that the failure to train and/or supervise was the "moving force" behind the deprivation of a constitutional right. Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998).

46. Plaintiff has not alleged that Defendants Ferrell or Knox were personally involved in the alleged use of excessive force against him on October 29, 2005, nor has Plaintiff presented evidence that either Defendant had a policy or custom of allowing officers to use excessive force against inmates.

47. Therefore, Defendants Knox and Ferrell are entitled to judgment as a matter of law on Plaintiff's claims for this reason, as well.

## V.  CONCLUSION

Based on the foregoing, the Court concludes that Defendants are entitled to summary judgment in their favor on all claims asserted against them by Plaintiff. Accordingly, it is recommended that Defendants' Motion for Summary Judgment be **GRANTED** and that the entirety of Plaintiff's Complaint against Defendants be **DISMISSED** with prejudice.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate

Judge.

DONE this 29th day of January, 2008.

                                                        <u>s/WILLIAM E. CASSADY</u>
                                                        UNITED STATES MAGISTRATE JUDGE

## MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.     **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)©); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

   A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.     **Opposing party's response to the objection.**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.  Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.     **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.